IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TINA C. NGUYEN, O.D.

      Plaintiff,

v.

VOORTHUIS OPTICIANS, INC., et al.,

      Defendants.

Civil Action No. 06-cv-485 (EGS)

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED, AND MEMORANDUM IN SUPPORT

NOW COME Defendants, Voorthuis Opticians, Inc., and Rebecca Voorthuis, by counsel, and move to dismiss this action pursuant to Fed. R. Civ. P. Rule 12(b)(6) for failure to state a claim on which relief may be granted.  In support hereof, Defendants state as follows:

1. This is a diversity case in which jurisdiction is founded under 28 U.S.C. § 1332.

2. The claims in this action, as pled, are:

Count I: Declaratory Judgment relating to the "Virginia Health Records."

Count II: Detinue of the "Virginia Health Records."

Count III: Breach of Contract relating to employment in Virginia.

Count IV: Fraud related to Virginia Code provisions.

Count V: Constructive Discharge related to Virginia employment.

Count VI: Unlawful Seizure and/or Detention of Property, with regard to the "Virginia Health Records."

Count VII: Intentional Interference with Business Relationships related to retention of "Virginia Health Records."

Count VIII: Conversion of "Virginia Health Records."

3. The premise of the "Virginia Health Records" counts is that under Virginia law, the "Virginia Health Records" are the property of Plaintiff.  This premise being false, these counts must

fail.

4.     The employment related counts also fail to state a claim on which relief may be granted because (a) as to Count III, Plaintiff fails to plead the elements of a contract, and in any event there is no implied covenant of good faith and fair dealing under Virginia law; (b) as to Count IV, Plaintiff fails to plead the elements of fraud, particularly that any reliance be reasonable; and (c) as to Count V, Plaintiff has failed to plead a legally-enforceable entitlement to continued employment that would except her from the general Virginia law of at-will employment, such that a discharge, constructive or otherwise, would be actionable.

5.     IIn further support hereof, Defendants' submit the following Memorandum of Points and Authorities.

POINTS AND AUTHORITIES

**FACTS**

The following facts are taken from the Complaint and must, for purposes of this motion, be treated as true at this stage of the proceedings, *see Does v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985), although, of course, Defendants do in fact dispute many of them.

In this diversity action, Plaintiff alleges that she is an optometrist licensed to practice in several states, including Virginia. (Complaint ¶ 1). Defendant Voorthuis Opticians, Inc., is, according to the Complaint, a corporation primarily engaged in the business of selling "optometric products," and has offered "optical services" in Virginia for a period in excess of 30 years (¶ 2-3). Defendant Rebecca Voorthuis is an optometrist. (¶ 4).

Plaintiff alleges that prior to accepting employment with the company primarily in its Virginia locations, she inquired of the Company whether, under Virginia law, she was permitted to be employed by the company and provide "medical services" in Virginia. The "Company," it is alleged, assured her that "the Virginia Code prohibition did not apply based, first, on a 'loophole' in the law that allowed the Company to hire optometrists because the company was headquartered in

the District of Columbia, and second, that Rebecca Voorthuis was a licensed optometrist, and that the Company, as a 'family owned business,' was thus not subject to the Virginia Code prohibition." Plaintiff further alleges that these statements were made "intentionally, maliciously, fraudulently, and in reckless disregard of the truth, and with the intent to deceive and mislead" Plaintiff, and that the Company knew the statements were false. ¶ 5. Plaintiff, "in reliance on the aforesaid representations" accepted an offer of employment with the Company on May 28, 2003. ¶ 6.

From that time until January 18, 2006, Plaintiff practiced optometry for the company "the overwhelming majority of [her] time" at the Company's location in Alexandria, Virginia, ¶ 7, during which time she "treated several thousand patients at the Company's Virginia locations" and "maintained a separate health record file for each of the Virginia Patients." Plaintiff refers to those records in which she was "the only optometrist providing medical services" as the "Virginia Health Records." Plaintiff alleges that she kept these records at the Company's Virginia locations. ¶ 8.

On or about January 6, 2006, Plaintiff alleges that "she was informed that, because she was practicing optometry as an employee of the Company and not as an employee of Dr. Voorthuis, she was in violation of the Virginia statute prohibiting employment by commercial or mercantile establishments." She states that when she confronted the company with this information, it reiterated its previous position about the "loophole" because its headquarters is in the District of Columbia. ¶ 9. The next day, Plaintiff ceased treating patients while she waited for the Company to act on its assurance that it would quickly effect a corporate change to bring it into compliance with Virginia law. She alleges that the company was satified with her work and had no intention of terminating her employment. ¶ 10.

On January 12, Plaintiff states that she informed the company that she would not report to work in the District of Columbia because it could not offer assurance that she would be covered under its malpractice policy. ¶ 11. On January 18, she was threatened with dismissal unless she reported to work on January 19, based on the company's position that her refusal to report to work

"will mean [she has] decided to abandon your position with our organization, and we will be forced to respond accordingly. ¶ 12. Following the foregoing threat to dismiss her, she resigned that same day. ¶ 13.

Plaintiff further alleges that on January 26, 2006, she wrote to the company demanding, among other things, possession of the Virginia Health Records "so that she can fulfill her obligations to those patients" under Virginia law. ¶ 17.

By letter of February 2, 2006, the Company rejected her demand for the Virginia Health Records, declaring that the records "are and will remain in the custody of Rebecca Voorthuis, O.D." The company and/or Dr. Voorthuis retains physical possession of the records. ¶ 18.

## ARGUMENT

### I.     THE "VIRGINIA HEALTH RECORDS" ARE NOT PLAINTIFF'S PROPERTY

Counts I, II, VI, VII, and VIII are all premised on the concept that the "Virginia Health Records" belong to Plaintiff. This is, in fact, untrue.

Plaintiff <u>admits</u> that she was practicing optometry in Virginia as an employee of Voorthuis Opticians, Inc. (the Company). This is a violation of Va. Code § 54.1-3205,[1] and the wording of that

---

[1] Until December 31, 2005, this section provided:
**Practicing in a commercial or mercantile establishment.**
A. It shall be unlawful for any optometrist to practice his profession as a lessee of or in a commercial or mercantile establishment, or to advertise, either in person or through any commercial or mercantile establishment, that he is a licensed practitioner and is practicing or will practice optometry as a lessee of or in the commercial or mercantile establishment.
B. No licensed optometrist shall practice optometry as an employee, directly or indirectly, of a commercial or mercantile establishment, unless such commercial or mercantile establishment was employing a full-time licensed optometrist in its established place of business on June 21, 1938.
C. For the purposes of this section, the term "commercial or mercantile establishment" means a business enterprise engaged in the selling of commodities.

section makes it clear that it is the *optometrist*, not the employer, that is in violation ("No licensed optometrist shall…").

Plaintiff asserts in ¶ 16 of her Complaint that the Virginia Health Records belong to her and are her property pursuant to Va. Code §§ 8.01-581.1 and 32.1-127.1:03.  Previously, Plaintiff based her contention on Va. Code § 54.1-2403.3.  That latter section provides:

> Medical records maintained by any health care provider as defined in § 32.1-127.1:03 shall be the property of such health care provider or, in the case of a health care provider employed by another health care provider, the property of the employer. Such health care provider shall release copies of any such medical records in compliance with § 32.1-127.1:03 or § 8.01-413, if the request is made for purposes of litigation, or as otherwise provided by state or federal law.

"Health care provider" is defined, as stated, in § 32.1-127.1:03 (one of the

---

D. This section shall not be construed to prohibit the rendering of professional services to the officers and employees of any person, firm or corporation by an optometrist, whether or not the compensation for such service is paid by the officers and employees, or by the employer, or jointly by all or any of them.

Effective December 31, 2005, this section was amended to re-number former "D" as E, and add a new subsection D, as follows:

D. For the purposes of this section, an optometrist shall be deemed to be practicing in a commercial or mercantile establishment if he practices, whether directly or indirectly, as an officer, employee, lessee or agent of any person or entity in any location that provides direct access to or from a commercial or mercantile establishment. Direct access includes any entrance or exit, except an entrance or exit closed to the public and used solely for emergency egress pursuant to applicable state and local building and fire safety codes, that prohibits a person from exiting the building or structure occupied by such practice or establishment (i) onto an exterior sidewalk or public way or (ii) into a common area that is not under the control of either the optometry practice or the commercial or mercantile establishment, such as into the common areas of an enclosed shopping mall. For the purposes of this section, neither an optometric practice nor an ophthalmologic practice which sells eyeglasses or contact lenses ancillary to its practice shall be deemed a commercial or mercantile establishment. Further, any entity that is engaged in the sale of eyeglasses or contact lenses, the majority of the beneficial ownership of which is owned by an ophthalmologic practice and/or one or more ophthalmologists, shall not be deemed a commercial or mercantile establishment.

sections that Plaintiff does cite), entitled "Health records privacy":

> "Health care provider" means those entities listed in the definition of "health care provider" in § 8.01-581.1, except that state-operated facilities shall also be considered health care providers for the purposes of this section. Health care provider shall also include all persons who are licensed, certified, registered or permitted or who hold a multistate licensure privilege issued by any of the health regulatory boards within the Department of Health Professions, except persons regulated by the Board of Funeral Directors and Embalmers or the Board of Veterinary Medicine.

As the holder of a license from the Board of Optometry, Plaintiff would be a health care provider. But the definition also includes entities listed in the definition of that term in § 8.01-581.1:

> "Health care provider" means (i) a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse or a person who holds a multistate privilege to practice such nursing under the Nurse Licensure Compact, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, professional counselor, licensed dental hygienist, health maintenance organization, or emergency medical care attendant or technician who provides services on a fee basis; (ii) a professional corporation, all of whose shareholders or members are so licensed; (iii) a partnership, all of whose partners are so licensed; (iv) a nursing home as defined in § 54.1-3100 except those nursing institutions conducted by and for those who rely upon treatment by spiritual means alone through prayer in accordance with a recognized church or religious denomination; (v) a professional limited liability company comprised of members as described in subdivision A 2 of § 13.1-1102; (vi) a corporation, partnership, limited liability company or any other entity, except a state-operated facility, which employs or engages a licensed health care provider and which primarily renders health care services; or (vii) a director, officer, employee, independent contractor, or agent of the persons or entities referenced herein, acting within the course and scope of his employment or engagement as related to health care or professional services.
>
> Based on Plaintiff's allegations, Defendant Voorthuis Opticians, Inc., is "a corporation …

which employs or engages a licensed health care provider and which primarily renders health

care services."  Under the same code section, "'Health care' means any act, or treatment performed or furnished, **or which should have been** performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." (emphasis added).  Plaintiff admits as much: she was a licensed health care provider, and she rendered optometric services for the Company.  Accordingly, both Plaintiff and Defendant are "health care providers."

Turning back to § 54.1-2403.3, governing ownership of medical records, that section states that "medical records maintained by any health care provider as defined in § 32.1-127.1:03 shall be the property of such health care provider **or, in the case of a health care provider employed by another health care provider, the property of the employer.**"  Plaintiff was a health care provider employed by another health care provider, therefore rendering the records the property of the employer, not the employee.

This makes complete sense.  Certainly, these provisions exist for the benefit of the patients, not the benefit of the health care providers.  Accordingly, statutory provisions exist, for example, requiring that patient records not be transferred without notice to patients, even if it is only to move them over a certain distance to another location (§ 54.1-2405); provisions regarding privacy of such records (§ 32.1-127.1:03); and provisions regarding the means of storage of such records (§ 54.1-2403.2).  There are also provisions requiring the provision of copies to patients and others (§ 54.1-2403.2).  Accordingly, the records belong to the entity that provides the care and maintains the records - in this case, Voorthuis Opticians, Inc.  They do not belong to the departing employee for that employee's competitive purposes - clearly her intent, as can be seen from her complaint asserting business-type tort claims and damages to her

business interests as a result of not having the records.

Accordingly, under Virginia law, the records belong to Voorthuis Opticians, Inc. (which, as stated in ¶ 18 of the complaint, is keeping them under the supervision of Rebecca Voorthuis, O.D., a licensed optometrist).  Because Counts I, II, VI, VII, and VIII all depend on the erroneous proposition that the records belong to Plaintiff, these counts must be dismissed.

## II. COUNT III MUST BE DISMISSED BECAUSE THERE WAS NO CONTRACT BREACHED

Plaintiff asserts that Defendant Voorthuis Opticians, Inc., breached a contract with her, and in particular the implied covenant of good faith and fair dealing.   However, under Virginia law,

> A covenant of good faith and fair dealing will not be implied as a part of an at-will employment contract where the employer as well as the employee are at liberty to terminate the contract. *Schryer v. VBR*, 25 Va. Cir. 464 (1991). Virginia does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing in an at-will employment contract. *Derthick v. Bassett-Walker, Inc.*, 904 F. Supp. 510 (W.D. Va. 1995).

*Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244, 246 (Lee County Cir. Ct. 2002).  *See also Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005).  Plaintiff never alleges that her employment was anything other than at will.  Accordingly, Plaintiff's claim must fail.

To the extent Plaintiff alleges other contractual breaches, they must fail as well.  Plaintiff alleges that certain representations made to her prior to her employment actually breached "the parties' agreement," ¶ 24, but nowhere does she allege what that agreement was.  She pleads "breach of contract," but fails to plead the existence or terms of a contract.  Without an allegation of a contract, it is plain that Plaintiff's claim for breach of contract fails to state a claim on which relief may be granted.

### III.   COUNT IV, ALLEGING "FRAUD", MUST BE DISMISSED

In Count IV, Plaintiff alleges that the "intentional, malicious and fraudulent representations" as set forth in ¶ 5 constitute the tort of fraud.  Under Virginia law, "to establish fraud, it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation."  *Metrocall of Delaware v. Continental Cellular Corp.*, 246 Va. 365, 374, 437 S.E.2d 189, 193-94 (1993).

Furthermore, to establish fraud, there must be a misrepresentation of material fact.  Here, a review of ¶ 5 demonstrates that the alleged representations were not of fact, but of law.  In *Hicks v. Wynn,* 137 Va. 186, 119 S.E. 133 (1923), the Supreme Court of Virginia stated:

> A representation of what the law will or will not permit to be done is one on which the party to whom it is made has no right to rely; and if he does so, it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be decided by ordinary vigilance and attention. It is an opinion in regard to the law, and is always understood as such.
>
> The law is presumed to be equally within the knowledge of all parties.

*Hicks,* 137 Va. at 196, 19 S.E. at 186-87.

Accordingly, there being no actionable fraud pled, Count IV must be dismissed.

### IV.   COUNT V, CONSTRUCTIVE DISCHARGE, MUST BE DISMISSED

Count V is entitled "Constructive Discharge."  It states, in its entirety, that all prior paragraphs are incorporated by reference, and that "as a result of the foregoing" Plaintiff has suffered damages.  As "the foregoing" are all parts of other counts, there is no cause of action pled <u>at all</u>.

That aside, assuming that what Plaintiff is trying to do is assert that she was

constructively fired when she quit, she still fails to state a claim because she pleads no reason why Defendant could not fire her *for any reason or no reason*.

> Virginia adheres to the common-law rule that when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice.
>
> An employee is ordinarily at liberty to leave his employment for any reason or for no reason, upon giving reasonable notice, without incurring liability to his employer. Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer.

*Miller v. SEVAMP, Inc.*, 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987). *See also Lockhart v. Commonwealth Education Systems Corp.*, 247 Va. 98, 102, 439 S.E.2d 328 (1994); *Progress Printing Co. v. Nichols*, 244 Va. 337, 340, 421 S.E.2d 428 (1992). Plaintiff has not pled in any stretch of the imagination a contractual provision providing for any duration of employment. Accordingly, her employment was at will.

While there are statutory (discrimination provisions, for example) and common law exceptions (e.g., discharge in violation of clearly established statutory public policy, as in *Bowman v. State Bank of Keysville*, 229 Va. 534, 539, 331 S.E.2d 797 (1985)), Plaintiff has not pled a cause of action for wrongful termination in violation of public policy. Nor has she pled a statutory cause of action for, for example, employment discrimination. Rather, she has simply alleged that she was constructively discharged. But if she would not have a claim for an *actual* discharge because her employment was at will, she certainly could not have a claim for constructive discharge. Defendant had a right to fire her. That she quit does not put her in a

better position.[2]

Accordingly, Count VI must be dismissed.

### V.     ALL CLAIMS AGAINST REBECCA VOORTHUIS MUST BE DISMISSED

A review of the entire Complaint shows that nowhere is there an allegation that Defendant Rebecca Voorthuis breached any duty or incurred any liability to Plaintiff. Plaintiff almost admits as much in ¶ 19, in saying that she is only a party based on the representation of counsel for Defendant Voorthuis Optician, Inc., that the records are in her possession. But she is an employee of the Company, and the fact that the records are in her "custody" as an employee does not create a cause of action against her. Accordingly, all claims against Rebecca Voorthuis must be dismissed.

---

[2] In fact, under Virginia law, while the Supreme Court has not decided the issue, it appears that where a *Bowman* wrongful discharge claim is concerned, a constructive discharge will not suffice and the Plaintiff must be actually discharged. In *Jones v. Professional Hospitality Resources*, 35 Va. Cir. 458, 461 (Va. Beach Cir.1995), the Court held:

> The Court in *Miller* emphasized that the conduct which gives rise to the application of the narrow exception is misuse by the employer of his freedom to terminate the services of his employee. *Miller [v. SEVAMP]*, supra, 234 Va. at 467. When an employer abuses this right to terminate, a remedy is available to the employee. The policy underlying the rule does not contemplate the resignation of an employee followed by an action for wrongful discharge. The at-will employment relationship permits termination of services by the employer or the employee, for any reason. When the employee chooses to resign, no special rule applies. It is only when the employer actually terminates the employee in violation of some established public policy that the narrow exception is applied.
>
> Moreover, given that the exception is indeed a narrow one which the courts of Virginia have sparingly applied and that the notion of constructive discharge as a basis for the exception has not been recognized in Virginia, it is the opinion of this Court that the exception should not now be expanded.

WHEREFORE, Defendants respectfully request that the Court enter an Order dismissing the Complaint in its entirety for failure to state a claim on which relief may be granted.

Dated: April 6, 2006.

Respectfully submitted,

 /s/ Daniel M. Press
Daniel M. Press  #419739
CHUNG & PRESS, P.C.
6723 Whittier Ave., Suite 302
McLean, VA 22101
(703) 734-3800
(703) 734-0590 fax
dpress@chung-press.com
Counsel for Defendants

CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of April, 2006, I caused a copy of the foregoing Motion to be served by First Class Mail, postage prepaid, upon counsel for Plaintiff, addressed to:

>Larry J. Stein, Esq.
>Allen E. Hirschman, Esq.
>2009 N. 14th Street, Suite 708
>Arlington, VA 22201

    /s/ Daniel M. Press
    Daniel M. Press