IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TINA C. NGUYEN, OD ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 06-cv-485 (EGS) |
| ) | |
| VOORTHUIS OPTICIANS, INC. ) | |
| ) | |
| and ) | |
| ) | |
| REBECCA VOORTHUIS, OD ) | |
| ) | |
| Defendants. ) | |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT
FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

BACKGROUND

On March 9, 2006, Plaintiff, Tina C. Nguyen, an optometrist licensed in the District of

Columbia, the Commonwealth of Virginia, and in the State of Maryland, filed a Complaint in the

Superior Court for the District of Columbia.  In the Complaint, Plaintiff asked for a Declaratory

Judgment that certain patient medical records belong to her and not to her former employer, Voorthuis

Opticians, Inc. (the "Company"), one of the Defendants.  In addition, the Complaint asserted various

counts relating to fraud on the part of the Company relating to Plaintiff's employment with the

Company.  On March 14, 2006, Defendants removed this matter to this Court.  On April 6, 2006,

Defendants filed their Motion to Dismiss for Failure to State a Claim on Which Relief May Be

Granted.  On April 17, 2006, Plaintiff filed its Unopposed Motion to Postpone Her Response to

Defendants' Motion to Dismiss.

On April 25, 2006 Plaintiff filed an Amended Complaint pursuant to Federal Rules of Civil

Procedure 15(a).  Under Rule 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served and the court has not decided a motion to dismiss.  *Adams v. Quattlebaum*, 219 F.R.D. 195, 196 (D.D.C.), citing *Hurson Associates, Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000).  Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15.  229 F.3d at 283.  The amended complaint "becomes the operative complaint due to its superseding nature."  *Adams*, 219 F.R.D. at 197, citing *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884), and, at least in *Adams*, the court denies without prejudice, as moot the pending motion to dismiss.  *Id*.        On May 5, 2006, Defendants withdrew, as moot, their Motion to Dismiss.  Finally, on May 12, 2006, Defendants filed their pending Motion to Dismiss Amended Complaint for Failure to State a Claim on Which Relief May be Granted, and Memorandum in Support Thereof ("Motion").

<u>FACTS</u>

The Plaintiff, Dr. Tina Nguyen, was employed as an optometrist by the Defendant, Voorthuis Opticians, Inc., from May 28, 2003, when she signed the "Employment Agreement" of the same date, until January 18, 2006, when she resigned, following the Company's written threat, that same day, to dismiss her.  Prior to Dr. Nguyen acceptance of employment with the Company, and because it was anticipated that she would spend most of her time in the Company's Virginia locations, Dr. Nguyen inquired of the Company whether, in light of the Virginia Code prohibition against employment of optometrists by commercial or mercantile establishments, she was permitted to be employed by the Company and provide medical services in Virginia.

In response, the Company's General Manager, John Morley, a thirty-year veteran of the Company, intentionally misled Dr. Nguyen that when he told her, falsely, that the Virginia Code

prohibition did not apply based on a "loophole" in the law that allowed the Company to hire optometrists because the Company was headquartered in the District of Columbia. Mr. Morley also told Dr. Nguyen that Rebecca Voorthuis was a licensed optometrist, and that the Company, as a "family owned business," was not subject to the Virginia code prohibition.

Assuring Plaintiff that Dr. Voorthuis was an optometrist and that the Company was "family-owned," however, was a ruse; the intentionally-false impression created by these two statements was that Dr. Voorthuis, herself, owned the company because, under Va. Code. Ann. § 54.1-3205, Plaintiff could have been employed legally working for another optometrist, Dr. Voorthuis, but not, directly, for the Company. Amended Complaint, ¶ 5. In other words, the only reason for Mr. Morley's misrepresentation was to mislead Dr. Nguyen into believing that Dr. Voorthuis owned the "family owned business." These false statements, upon which Dr. Nguyen reasonably relied in her decision to enter into an "Employment Agreement" with the Company, are at the heart of this dispute.

On January 6, 2006, the Plaintiff was informed that because she was practicing optometry as an employee of the Company and not as an employee of Dr. Voorthuis, she was in violation of the Virginia statute prohibiting employment by commercial or mercantile establishments. Amended Complaint, ¶ 11. When Plaintiff informed the Company of this situation, the Company advised her, first, to continue working just as she had been, notwithstanding the fact that Plaintiff already had advised them that her employment was contrary to Virginia law. *Id.* Next, the Company -- by means of the January 18, 2006 letter threatening to dismiss her -- attempted to force Plaintiff to work in its District of Columbia location, notwithstanding the fact that Plaintiff already had advised them that her malpractice insurance policy would not cover her employment in the District of Columbia. Amended Complaint, ¶ 13.

Dr. Nguyen seeks, among other things, a declaratory judgment affirming her right to ownership and possession of certain patient medical records, which, under the relevant Virginia medical records statutes, belong to her as the treating physician. Second, Dr. Nguyen seeks damages based on, among other things, the Company's fraudulent inducement of the employment agreement. Pursuant to Local Rule 7(f), Plaintiff requests oral argument.

ARGUMENT

I. <u>Legal Standard for a Motion to Dismiss for Failure to State a Claim</u>

For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests. Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson,* 355 U.S. 41, 47 (1957). A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974), *overruled on other grounds by*, *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). Thus, the court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Atchinson v. District of Columbia,* 73 F.3d 418, 422 (D.C. Cir. 1996). In deciding such a motion, the court must accept all of the complaint's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. *Scheuer*, 416 U.S. at 236.

Based on the Amended Complaint, and the Motion, it is clear that the Defendants have fallen far short of the required showing. The facts as presented in the Amended Complaint, as construed in Plaintiff's favor, support her entitlement to ownership and possession of the patient medical records and

her claims to relief from the fraudulent misrepresentations upon which she was induced to accept the Company's offer of employment.

II.  Conflicts Principles

 Before addressing the arguments of the respective parties in a motion to dismiss, this Court first must determine what law applies to the substantive claims.  *In re U.S. Office Products Co. Securities Litigation*, 251 F.Supp.2d 58, 67 (D.D.C. 2003).  In a diversity action, a federal district court applies the choice of law principles of the state or jurisdiction in which it sits.  *Id*. at 68, citing *Ferens v. John Deere Co.*, 494 U.S. 516, 518-19 (1990).  Under District of Columbia conflict of law principles, the court must conduct the choice of law analysis for each claim being adjudicated.  *Thompson v. Islam*, 2005 U.S. Dist. LEXIS 37114, at *9 (July 29, 2005), citing *In re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. 333, 341 (D.D.C. 1983).

 The patient medical records at issue in this case are located in the Company's Alexandria, Virginia location.  In conducting the required "governmental interest analysis,"        District of Columbia courts look to the Restatement (Second) of Conflict of Laws to identify the jurisdiction with the "most significant relationship" to each issue in dispute.  *Id*., citing *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 566 A.2d 31, 40 (D.C. 1989).  Based on the fact that the patient medical records at issue are located in the Company's Alexandria, Virginia location, that they were created as a result of Plaintiff's treatment of her patients at that location, and that Virginia has enacted a statutory scheme addressing their ownership and possession, Plaintiff does not dispute Defendants' assumption that Virginia law applies.  With respect to Plaintiff's claims of fraud, constructive fraud and fraudulent inducement, the requirements for proof of fraud in Virginia and in the District are quite similar.  See

discussion, *infra* pp. 17-19.  *See Islam*, at *23, citing Restatement (Second) of Conflict of Laws.[1]

III.  Plaintiff, as Treating Physician, is a "Health Care Provider" under Virginia Law thus Entitled to Ownership and Possession of Her Patients Medical Records.

It is clear that Virginia law on ownership of patient medical records controls.  Ownership of medical records in the Commonwealth of Virginia is addressed in two complementary provisions of the Code of Virginia.  Medical records are the property of the "health care provider." Va. Code Ann. §§ 32.1-127.1:03; 54.1-2403.3 (Michie 2005).[2]  Both of these statutory provisions rely on the definition of "health care provider" contained in Section Eight of the Virginia Code, which reads, in pertinent part:

> "*Health care provider*" means (i) a person, corporation, facility, or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, professional counselor, licensed dental

---

[1] The Restatement (Second) of Conflict of Laws suggests that a court deciding which state's law governs a fraud claim consider the following factors:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations;

(b) the place where the plaintiff received the representations;

(c) the place where the defendant made the representations;

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties;

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2)* (1971).

[2] "Health records are the property of the health care entity maintaining them."  Va. Code Ann. § 32.1-127.1:03 (Michie 2005).

"Medical records maintained by any health care provider as defined in § 32.1-127.1:03 shall be the property of such health care provider or, in the case of a health care provider employed by another health care provider, the property of the employer."  Va. Code Ann. § 54.1-2403.3 (Michie 2005).  Because the Company is not a "health care provider" under section 8.01-581.1, it has no right to ownership and possession of the medical records under this "employer" provision.

> hygienist or health maintenance organization; … (vi) a corporation, partnership,
> limited liability company or any other entity, except a state-operated facility, which
> employs or engages a licensed health care provider and which *primarily* renders health
> care services.  (Emphasis added).

Va. Code Ann § 8.01-581.1 (Michie 2005).  As Defendants concede, Motion, at 6, Plaintiff, as an

optometrist licensed by the Commonwealth of Virginia (Amended Complaint ¶ 1), is a "health care

provider."  Even assuming, *arguendo*, that Plaintiff was, from May 28, 2003, until January 18, 2006, in

technical violation of section 54.1-3205's prohibition on employment in a commercial or mercantile

establishment, that status would have no impact on Plaintiff's right to ownership and possession of the

medical records.  In fact, Defendants' continued possession and control of the medical records prevents

Plaintiff's compliance with her duty to "[m]aintain records on each patient for not less than five years

from the date of the most recent service rendered."  Regulations of the Virginia Board of Optometry, 18

VAC105-20-40 (2006).

IV.  Defendant is not a "Health Care Provider" under Virginia Law and has No Right to
Ownership and Possession of the Medical Records.

    A.  Defendant Company is a Commercial Enterprise and Not a Health Care Provider.

    Under the definition of "health care provider," quoted in section 8.01-581.1(vi), the Company, to

meet that definition, must be engaged, *primarily*, in providing health care, as opposed to commercial or

mercantile services.  (Emphasis added.)  As Defendants recognize, Motion, at 2, all facts contained in

the Amended Complaint are treated as undisputed for purposes of their Motion.  *Campbell-El v.

District of Columbia*, 881 F.Supp. 42, 43 (D.D.C. 1995). The Company,

> is a District of Columbia corporation primarily engaged in the business of selling
> optometric products.  At all times referred to herein, the Company had commercial
> retail space in Virginia, Maryland, and the District of Columbia, and would be
> considered a "commercial or mercantile establishment" as that term is defined in
> section 54.1-3205 of the 1950 Code of Virginia, as amended.  At all times referred to

herein, the Company has never been a health care entity or a health care provider as
those terms are defined in the Code of Virginia.

Amended Complaint, ¶ 2. The Company's primary mission is the sale of a "wide selection
of designer, traditional and innovative eyewear." *Id.* The Company, according to the
Amended Complaint, is a "commercial or mercantile establishment" and not a health care
provider.

Defendants, in an attempt to deny the import of the actual words of the Amended
Complaint – "Plaintiff admits as much" -- stretch them beyond recognition. Thus, "[b]ased
on Plaintiff's *factual* allegations, Defendant Voorthuis Opticians, Inc., 'is a corporation . . .
which employs or engages a licensed health care provider and which primarily renders health
care services.'" Motion, at 7. That statement is untrue. Nowhere in her Amended Complaint
does Plaintiff concede that the Company "primarily renders health care services" because,
plainly, it does not.

Plaintiff does concede, however, that Defendants dispute this point, and quite
strenuously. But they cannot have it both ways; they cannot both concede, as they must,
their acceptance of the facts asserted by Plaintiff in her Amended Complaint, and then
contest those factual assertions in order to demonstrate that the Company renders, primarily,
health care services. It is precisely because the parties disagree, pointedly, on this material
fact that the Court, respectfully, should deny Defendants' Motion at this preliminary stage of
the proceedings before discovery even begins; they have, demonstrably, failed to show that
under no set of facts can Plaintiff make out a case in support of Counts I, II, VIII, IX and X
of the Amended Complaint, relating to Defendants' wrongful possession of the medical

records.                    .

Moreover, optical companies like Voorthuis typically are treated by the Virginia Board of Optometry as mercantile establishments.  *See*, *e.g.*, *In Re: Marcia K. Leverett, O.D.*, Complaint No. 92-01955 (May 19, 1994) (Attached as Exhibit 1) (optometrist illegally employed by Colonial Optical Company, Virginia Beach, Virginia, a mercantile establishment).

Section 8.01-581.1(vi) prescribes a two-part test, both parts of which must be met before a corporation can be considered a health care provider:  (1) it "employs or engages" a licensed health care provider; (2) "*and* which primarily renders health care services." (Emphasis added).  "Primarily" is defined as "chiefly" or "mainly," *The American Heritage Dictionary of the American Language* 1,393 (4th ed. 2000), "fundamentally" and "principally."  *Websters Third New International Dictionary* 1,800 (1993).  The second test - - primarily renders health care services – is "an essential component of § 8.01-581.1's definition of 'health care provider.'"  *Pulliam v. Coastal Emergency Services*, 509 S.E.2d 307, 319 (Va. 1999).  And it is this part of the test that the Company cannot, by definition, at this stage of the proceedings, satisfy.  *Griffin v. United States*, 537 F.2d 1130, 1137 (Temp. Em. Ct. App.),      *cert. denied*, 429 U.S. 919 (1976) (Material fact problems are not to be resolved on a motion to dismiss or motion for summary judgment).

 B.  Voorthuis is Unlike True Health Care Providers.

In *Pulliam*, the Supreme Court of Virginia analyzed whether a corporation, Coastal Emergency Services, met the definition of "health care provider" at issue here.  In reaching its decision that the company met the test, the Court found that the company was "created to

provide emergency physicians to staff emergency departments in hospitals for the purpose of rendering health care services in such departments."  509 S.E.2d at 320.  It noted that Coastal -- unlike Voorthuis Opticians, Inc. -- employed no support personnel such as technicians, but entered into contracts with physicians who would provide their medical services in hospitals.

Coastal, a health care provider, employed physicians to perform emergency room services.  Voorthuis, on the other hand, during the time period covered by Plaintiff's employment contract (2003-2006), could employ physicians (optometrists) in Virginia only in violation of the public policy of the Commonwealth of Virginia, as reflected in Va. Code § 54.1-3205, which makes it unlawful for an optometrist to practice his or her profession as a lessee of or in a commercial or mercantile establishment.  See discussion, *infra pp.* 12-13.

In *Gedrich v. Fairfax County Department of Family Services*, 282 F.Supp.2d 439, 478 (E.D. Va. 2003), the court held that a company, Piedmont Behavioral Health Center, was a health care provider because it is a health care facility "that provides a wide range of therapeutic and treatment services by a multi-disciplinary team under the direction of a full-time psychiatrist."  Finally, in a medical malpractice action, the Virginia Supreme Court explained that Chippenham Pediatric, a Virginia corporation, is a "health care provider" under section 8.01-581.1:  the company provided "all health care [that] members of a family should receive from a pediatrician and a professional corporation engaged in providing health care services relating to the practice of pediatrics."  *Didato v. Strehler*, 554 S.E.2d 42, 43 (Va. 2001).  The common theme of these court decisions is that before a corporation can be deemed a "health care provider" under Virginia law, it must offer, primarily, medical

services by physicians, not commercial services like the Company's.

It is clear that, for purposes of Va. Code § 54.1-3205(A) (Michie 2005), the Company meets the definition of "commercial or mercantile establishment." The Company is "primarily engaged in the business of selling optometric products," offering optical services in Virginia for over 30 years. Amended Complaint ¶¶ 2,3. In Virginia, a business that engages in the sale of prescriptive eyeglasses and contact lenses is a "commercial or mercantile establishment."

Further, a "commercial establishment" is a "place where commodities are exchanged bought or sold"; the definition of "mercantile" is "having to do with trade or commerce or the business of buying and selling merchandise." Va. Att'y Gen. Op. No. 00-052 (July 28, 2000) ("Opinion") (Attached as Exhibit 2), http://www.oag.state.va.us/media%20center/Opinions/2000/jul005.htm. The Company's activities fit within this definition of commercial or mercantile establishment.

Finally, a ruling by the Virginia Board of Optometry demonstrates that the medical records belong, not to the commercial establishment for whom the optometrist was improperly employed (*see* Va. Code §54.1-3205), but to the treating optometrist. *See In Re: Jack David Cadenhead, O.D.*, Complaint No. 95-01538 (July 12, 1996) (Attached as Exhibit 3) (Under a license/lease agreement with Wal-Mart Store #2089, Bristol, Virginia, "all other forms in the patient files other than the doctor exam records and patient history forms, are the sole property of the licensor/lessor."). The Board held that patient medical records provision, which attempted to vest ownership of the patients' medical records in the commercial establishment, was in violation of section 54.1-3205 and section 54.1-3215(12), (15) and (16)

of the Virginia Code.

    C.  <u>The Company's Employment of Plaintiff was in Violation of Public Policy</u>.

    According to the Attorney General's Opinion, the "legislative policy inherent in §54.1-3205 is two-fold:  (1) to maintain an extrication of the practice of optometry from commercial or mercantile establishments; and (2) to prevent commercial enterprises from exercising control over an optometrist's professional practice."  Opinion, at 3.  Defendant Company, by its actions in fraudulently-inducing Plaintiff's employment, Amended Complaint ¶¶ 5,6, acted in violation of both public policy preferences of the Commonwealth of Virginia -- implemented through section 54.1-3205 -- in enforcing a separation between the practice of medicine and commerce.

    Defendants' Motion is premised on their mistaken assertion that the medical records belong to the Company, the entity that provides the care.  Motion, at 8.  As demonstrated, the treating physician, and not the Company, a commercial enterprise, provided the care. Therefore, the Court should deny Defendants' Motion to dismiss Counts I, II, VIII, IX and X of the Amended Complaint.

V.   The Company's Misstatements Constitute Fraudulent
    <u>Inducement of the Employment Contract, Even in an "At-Will" Context</u>.

    A.  <u>Fraudulent Inducement Focuses on Misrepresentations Prior to Plaintiff's Acceptance</u>.

    Virginia recognizes an action for damages "for actual and constructive fraud" in connection with an offer of "at-will" employment.  *See Cohn v. Knowledge Connections, Inc.*,   585 S.E. 2d 578, 579-80 (Va. 2003) ("*Knowledge Connections*") (alleged misstatements by the company involved concealment of gender bias on the part of an employee of the company, and misrepresentation of the

qualifications and seniority of another employee of the company).  Fraud at this stage of the hiring

process is akin to fraudulent inducement of the employment contract.  Actionable fraud may involve

present or pre-existing facts or, at times, "be predicated on promises which are made with a present

intention not to perform them." *Sea-Land Service, Inc. v. O'Neal*, 297 S.E.2d 647, 651 (Va. 1982),

quoting *Lloyd v. Smith*, 142 S.E. 363, 365 (Va. 1928) (employer's actions cast doubt on "at-will" status

of the employment).

    The District of Columbia also recognizes actions for fraudulent inducement of employment

contracts.  *See Isaac v. Mnemonic Systems*, No. 97-0988, 1998 U.S. Dist. LEXIS 4221 (D.C. Mar. 25,

1998) ("*Isaac*"); *Andolsun v. Berlitz Schools*, 196 A.2d 926, 927 (D.C. 1964) (one-year term); and

*Espaillat v. Berlitz Schools*, 383 F.2d 220, 221 (D.C. Cir. 1967) (one-year term) (plaintiff was

specifically told, untruthfully and knowingly, that her status as an alien (non citizen) would not affect

her employment).  Defendants urge this Court to dismiss Count III because Mr. Morley's

misrepresentations occurred "prior to the existence of a contract."  Motion, at 9.  Under this reasoning, a

plaintiff never could succeed in an action for fraudulent inducement of an employment contract.  The

doctrine of fraudulent inducement of employment contracts, by definition, applies to promises made by

the employer prior to contract formation. A misrepresentation claim, such as Plaintiff's, "requires the

employer to answer for harm caused by his dishonesty in inducing the relationship," even in the context

of "at-will" employment.  Sandra J. Mullings, *Truth-in-Hiring Claims and the At-Will Rule:  Should an

Employer Have a License to Lie?*, 1997 COLUM. BUS. L. REV. 105, 131 (1997).

    Even conceding, *arguendo*, that Plaintiff was hired as an "at will" employee, she asserts that she

is not suing Defendants based on a breach of her employment contract, *per se*, but on a tort claim that

Defendant's agent, Mr. Morley, fraudulently misrepresented facts to induce her into entering into her

employment agreement.3  In short, at-will status should not preclude a claim based on the type of misrepresentation which occurred here, which is intrinsic to the terms and conditions of employment. An employer who has affirmatively misrepresented a condition of continued employment -- such as the identity of the owner of the company, Albert Voorthuis -- has knowingly induced the employee to enter into the relationship on the basis of false information.  Again, assuming, *arguendo*, that the employer has the right to terminate the employment, even arbitrarily, this fact should not mean that he may escape liability when he brings the relationship into existence duplicitously.4

In the District of Columbia, "the misrepresentation underlying a fraud or negligent misrepresentation claim must be a misrepresentation as to past or present fact."  *Isaac*, at *22, citing *Day v. Avery*, 548 F.2d 1018, 1026 (D.C. Cir. 1976).  Mr. Morley's concealment of Dr. Voorthuis's lack of ownership of the "family business" was a misrepresentation of a "past or present fact."  Plaintiff, moreover, may not even be required to meet the District's requirement that a fraud claim have a factual predicate:  "However, exceptions to this rule are numerous and include situations . . . where the person making the representation has superior knowledge and knows that the recipient will be guided by his opinion."  *Id.*, citing *Avery*, 548 F.2d at 1026.  General Manager Morley's 30 years experience with the Company certainly meets this criterion, and, based on Plaintiff's asking him, he knew full well that Dr. Nguyen would be "guided by his opinion."

B.  The Amended Complaint Sufficiently Pleads the Elements of a Contract.

---

3 Courts in New York and elsewhere have held such a cause of action as cognizable if specific enough, and if the plaintiff alleges misstatements of existing fact as opposed to expressions of future expectation.  *See, e.g.*, *Navaretta v. Group Health Inc.*, 595 N.Y.S.2d 839, 841 (App. Div. 1993) (employer misrepresented known conditions upon which the employment could (and did) terminate; successful plaintiff did not seek redress for wrongful termination but for employers falsely inducing her into taking the employment).
4 Other courts which have permitted damage awards based on misrepresentation in the hiring process have focused on inducement into, rather than termination of, the employment relationship.  *See, e.g.*, *Wildes v. Pens Unlimited Co.*, 389 A.2d

Granting "every favorable inference" to the facts pled by Plaintiff, it is clear from the facts of the Amended Complaint that Plaintiff and Defendant Company entered into a contract of employment on May 28, 2003, and that Plaintiff was employed under that contract for approximately two and one-half years. Defendants' assertion, Motion, at 2, that the Amended Complaint fails to plead the elements of a contract is mistaken. "A fair reading of the complaint supports plaintiffs' position that they have sufficiently alleged that a contract was offered and accepted." *Winston v. Town Heights Development, Inc.*, 376 F.Supp. 1214 (D.D.C. 1974). As this Court has explained:

> It is well established that the Federal Rules of Civil Procedure are based on the theory that complaints operate as notice pleading. A complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place and circumstances of the alleged occurrences and which, if later proven to the required legal degree, will justify some form of relief.

*Id*. at 1217. In *Winston*, the defendant's motion to dismiss alleged that plaintiffs had not specified the elements of a contract in their complaint. A plaintiff, however, "need not allege every element of a binding contract to escape a Rule 12(b)(6) motion." *Id*., citing *Conley*, 335 U.S. at 48. This Court, likewise, should deny Defendants' attempt to dismiss Count III of the Amended Complaint for failure to state a claim on which relief may be granted.

VI.  Fraud

A.  The Misstatements are Fraudulent under the law of Virginia and the District.

Count IV of the Amended Complaint alleges Fraud, based on the facts presented in Count I, paragraphs 5, 6, 13 and 14. The Company's false representations to Plaintiff amount to fraudulent conduct under Virginia law. A cause of action for "actual fraud" requires proof of:

---

837 (Me. 1978); *Lokay v. Lehigh Valley Coop. Farmers, Inc.*, 492 A.2d 405 (Pa. Super. 1985); *Lazar v. Superior Court*, 909 P.2d 981, 983 (Ca. 1996).

"(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Knowledge Connections*, 585 S.E.2d at 581. The facts alleged in the Amended Complaint fulfill all required elements of a claim of fraud. Plaintiff, in reliance upon Mr. Morley's false reassurances, accepted employment with the Company in violation of section 54.1-3205 of the Virginia Code, at great risk to her professional reputation. Plaintiff, as a direct result of these false reassurances, has been damaged through loss of her professional position as an optometrist with the Company. Consistent with the Amended Complaint, to be supplemented in discovery, Plaintiff will show that Mr. Morley's misrepresentations meet Virginia's prerequisite to establish fraud – that the statements were intentional and represented fact and not mere opinion. *Id*.

Moreover, "[c]oncealment of a fact that is material to the transaction – here, that Dr. Voorthuis did not own stock in the "family-owned" corporation – knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied." *Metrocall of Delaware, Inc. v. Continental Cellular Corporation*, 437 S.E.2d 189, 193 (Va. 1993).

As noted, there are two false representations alleged in the Amended Complaint, ¶ 5. These two misrepresentations involve materials facts. A "material fact" is one that might affect the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Minus these two statements, Plaintiff cannot, under the facts alleged in the Amended Complaint, prove fraud. The Company's statements were made intentionally and knowingly, with an intent to mislead. Amended Complaint, ¶ 5. Plaintiff, in reliance on these false assurances and

misrepresentations, began working full-time for the Company on May 28, 2003.  As a result of

Plaintiff's reliance on these statements, she was forced to resign on January 18, 2006,

following the Company threat to dismiss her.  Amended Complaint, ¶¶ 13, 14.  At the time of

her resignation, the Company was paying Plaintiff an annual salary of $108,000, or $9,000 per

month plus loss of benefits in damages.

      B.  The false statements are factual.

      Under Virginia law a "misrepresentation, the falsity of which will afford ground for an action for

damages, must be of an existing fact, and not the mere expression of an opinion."  *Mortarino v.*

*Consultant Engineering Services, Inc.*, 467 S.E.2d 778, 781 (Va. 1996), quoting *Saxby v. Southern Land*

*Co.*, 63 S.E. 423, 424 (Va. 1909).  Defendants' assert that Count IV must be dismissed because, to

establish fraud, there must be a misrepresentation of fact, not law, and that the fraudulent

misrepresentations upon which Plaintiff relied were not factual, but represented mere opinion.  Motion,

at 10.  It is not that simple.  As the Virginia Supreme Court recently explained:

> We have not, however, established a bright line test to ascertain whether false
> representations constitute matters of opinion or statements of fact.  Rather, "each case
> must in large measure be adjudged upon its own facts, taking into consideration the
> nature of the representation and the meaning of the language used as applied to the
> subject matter and as interpreted by the surrounding circumstances."

*Mortarino*, 467 S.E.2d at 781, quoting *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207, 211

(1956).  In conclusion,

> It is not always an easy matter to determine whether a given statement is one of fact or
> opinion.  The relative knowledge of the parties dealings, their intentions and all of the
> surrounding circumstances, which can only be gathered from the evidence, affect the
> interpretation which the courts put upon the representations in determining whether
> they be of fact or opinion.

*Id.*, quoting *Garrett v. Finch*, 57 S.E. 604, 605 (Va. 1907).  Therefore, context is everything.

Moreover, in deciding whether a statement is one of fact or opinion, a court must consider the subject matter and the knowledge of the parties. Generally, if the statement concerns something of which there can be exact knowledge when made, then it is a statement of fact. *Shatarsky v. Long & Foster Real Estate, Inc.*, 31 Va. Cir. 328, 329-30 (1993). Mr. Morley's statements were factual. In addition, the twin set of guidance issued by the Virginia Supreme Court, nearly 100 years apart, highlights the importance of "surrounding circumstances," which can best be determined through discovery, once the Amended Complaint has been shown to have cleared the hurdle of satisfying the criteria for pleading fraud in Virginia. We believe, for the reasons discussed, that it does so. The Amended Complaint, ¶¶ 5, 6, also satisfies the federal requirement that fraud be stated with "particularity." Fed. Rules of Civil Proc. § 9(b).

The requirements to prove fraud in the District of Columbia are similar, but not identical to, those in the Commonwealth of Virginia. The "essential elements of fraud are: (1) a false representation, (2) concerning a material fact, (3) made with knowledge of its falsity and the intent to deceive or made recklessly, whether in disregard of its falsity or without positive knowledge of its truth, and (4) upon which reliance is placed." *McGowen v. Warnecke*, 739 F.Supp. 662 (D.D.C. 1990), citing *High v. McLean Financial Corp.*, 659 F.Supp. 1561 (D.D.C. 1987). In the District of Columbia, it is important, when pleading fraud, to demonstrate how the facts in the case make out a claim for fraud. *Id*. at 663. The Amended Complaint does just that. It explains precisely how Plaintiff, relying on the misrepresentations of the Company, was induced to enter into the employment contract.

Defendant argues that Plaintiff's admissions that Dr. Voorthuis is a licensed optometrist and that her father, Albert, owns the Company, somehow undercuts Plaintiff's claim of fraud. Motion, at

10.  This is not true at all.  On the contrary, Mr. Morley's assertion that the Virginia statutory prohibition did not apply because the Company was "family-owned" intentionally concealed a material fact -- that Dr. Voorthuis did not own the Company and that Dr. Nguyen could not, therefore, legally be employed by the Company in Virginia.  "Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresentation."  *In re Mitchell*, 727 A.2d 308, 315 (D.C. 1999), citing *Andolsun*,      196 A.2d at 927.

Federal Rules of Civil Procedure Rule 9(b) requires that the defendant be put on notice of "precisely what he or she must defend against."  *High*, 659 F.Supp. at 1566.  It does not establish an "inflexible requirement that pleadings be exhaustive."  Thus, for example, "while reliance is an essential element of a fraudulent misrepresentation claim, it need not be specially pleaded if it can readily be inferred from the allegations in the complaint."  *Id.*, citing *Democratic National Committee v. McCord*, 416 F.Supp. 505, 509 (D.D.C. 1976).

C.  Plaintiff Had the Right to Reasonably Rely on the Misrepresentations.

Defendants urge the Court to dismiss Count IV because, citing *Metrocall*, 437 S.E.2d at 193-94, to establish fraud "it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation."  *Metrocall* is inapposite.  It involved an attempt to rescind a settlement agreement.  Unlike the instant case, in *Metrocall*, the "record affirmatively shows as a matter of law" that plaintiffs had no right reasonably to rely upon misrepresentations by defendants "involved in an adversarial relationship" in the context of a negotiated settlement agreement.5  *Metrocall* was decided based on the record.  Any responsibility on the part of Plaintiff

---

5 This matter did not become adversarial until Defendants made it so, after Plaintiff advised them, in January, 2006, that she was practicing optometry as an employee of the company in violation of the

to demonstrate reasonable reliance is one which should not be decided on a motion to dismiss but should, instead, await development of the record through the normal discovery process.

VII.    <u>Constructive Fraud</u>

"Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Knowledge Connections*, 585 S.E.2d at 582, quoting *Evaluation Research Corp. v. Alequin,* 439 S.E.2d 387, 390 (Va. 1994). A person asserting a claim of constructive fraud must prove that the misrepresentation forming the basis of the claim caused damage to the one relying on it. *Id.* In other words, the Plaintiff would need to demonstrate that Mr. Morley's misrepresentations were the cause of her eventual departure from the Company. Such was clearly the case.

VIII.    <u>Constructive Discharge</u>

For the reasons stated, Plaintiff, faced with the demand that she report to work on January 19, 2006, or be fired, resigned. A constructive discharge occurs "when the employer deliberately makes working conditions intolerable and drives the employee into an involuntary quit." *Joyner v. Sibley Memorial Hospital*, 826 A.2d 362, 372 (D.C. 2003). Based on the Amended Complaint, Plaintiff has satisfied the prerequisites for asserting "constructive discharge." As noted, the Company insisted, on pain of dismissal, that Plaintiff must report for work in the District of Columbia, notwithstanding that Plaintiff medical malpractice coverage would not have applied. Amended Complaint, ¶ 13.

---

Virginia statute prohibiting employment by commercial or mercantile establishments. *See* Amended Complaint, ¶ 11.

The Fourth Circuit, however, has recognized constructive discharge in the workplace. In *Bristow v. The Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985), it held that "a constructive discharge occurs when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" In order to satisfy the Fourth Circuit test, a plaintiff must allege and prove two elements to establish a constructive discharge: (1) the deliberateness of the employer's action; and (2) the intolerableness of the working conditions. *Id*. Under this test, deliberateness only exists if the employer intended to force the employee to quit.

As noted, the Company threatened Plaintiff with dismissal if she did not report to work the very next day. Amended Complaint, ¶ 14. Intolerableness of working conditions is reached only when a reasonable person "in the employee's position would have felt compelled to resign." *Id*. One would be hard-pressed to find even one physician who would report to work absent malpractice coverage. It is, obviously, quite reasonable for a physician to refuse to report to work absent such coverage.

<u>CONCLUSION</u>

For the reasons stated, the Court should, respectfully, deny Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim on which Relief May be Granted. First, it is clear under Virginia law that the patient medical records belong to the Plaintiff, the treating physician, and not to the Company, which does not qualify as a health care provider. Second, the Company's misstatements constitute fraudulent inducement of the employment contract. Defendants have failed to meet their burden to demonstrate that no relief could be granted under any set of facts that could be proved consistent with the allegations of the Amended Complaint.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order denying Defendants'

Motion to Dismiss the Amended Complaint for Failure to State a Claim on Which Relief May Be

Granted.

Dated:  May 26, 2006

Respectfully submitted,


_____
Larry J. Stein Bar No. 397397
Allen E. Hirschmann, Bar No. 17012
2009 N. 14th Street, Suite 708
Arlington, VA 22201
703/812-7880
703/522-1250 Fax
Counsel for Plaintiff

CERTIFICATE OF SERVICE

    I certify that the attached Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Amended Complaint for Failure to State a Claim on Which Relief May Be Granted has been served, by first class mail, postage prepaid, on

    Defendants' Representative:

    Daniel M. Press, Esq.
    Chung & Press, P.C.
    6723 Whittier Avenue, Suite 302
    McLean, Virginia 22101


  May 26, 2006 _____                _____
(Date)                                                             Larry J. Stein
                                                                          Allen E. Hirschmann

Counsel for Plaintiff