**EXHIBIT 2**

Home
FOR KIDS!!
HOT TOPICS!
Our Office
Official Opinions
News Releases
Cases of Interest
Conflict of Interest Training
Publications
Class Action
Domestic Violence
Gangs
Meth Watch
Tobacco
Victim Notification
Consumer Assistance
SPAM/Technology Issues
FAQs
Other Links
Contact Us

*Attorney General of Virginia*

# Robert F. McDonnell

00-052

**PROFESSIONS AND OCCUPATIONS: OPTOMETRY — OPTICIANS — MEDICINE AND OTHER HEALING ARTS.**

**Business that engages in sale of prescriptive eyeglasses and contact lenses and nonprescriptive ophthalmic products, including business of licensed optician, constitutes "commercial or mercantile establishment." Sale of prescriptive ophthalmic goods is incidental to professional practice of ophthalmology and optometry. Neither ophthalmologists nor optometrists may be deemed to be "commercial or mercantile establishment." Optician is not in this category.**

Mr. John W. Hasty
Director, Department of Health Professions
July 28, 2000

You inquire concerning the meaning and definition of "commercial or mercantile establishment" in § 54.1-3205(A) and (C). You first ask whether a business that engages in the sale of prescriptive eyeglasses and contact lenses and nonprescriptive ophthalmic products, including the business of a licensed optician,[1] constitutes a "commercial or mercantile establishment" within the meaning of § 54.1-3205(A).[2]

The prohibition against practicing optometry in a commercial or mercantile establishment has existed in Virginia since 1938.[3] The initial statutory provision classified as unprofessional conduct, the *employment* of an optometrist, directly or indirectly, by a commercial or mercantile establishment, or the advertisement of such practice, unless the establishment was employing such optometrist on the effective date of the act.[4] The 1948 Session of the General Assembly enacted former § 54-397.1, making it a misdemeanor for an optometrist to practice optometry or to advertise such practice "as a lessee of any commercial or mercantile establishment."[5] As part of the recodification of the laws relating to professions and occupations, the 1988 Session of the General Assembly enacted § 54.1-3205.[6] Section 54.1-3205(A) expanded the prior prohibition to make it unlawful for an optometrist to practice his profession or to advertise the practice of optometry *in* a commercial or mercantile establishment;[7] § 54.1-3205 (B) prohibits the practice of optometry by an optometrist "as an employee, directly or indirectly, of a commercial or mercantile

establishment, unless such ... establishment was employing [the] optometrist [full-time] on June 21, 1938."[8]

Questions relating to the practice of optometry and the definition of the term "commercial or mercantile establishment" have been the subject of earlier opinions of the Attorney General.[9] A 1985 opinion concludes that an ophthalmologist using rent-free space in an optician's office within a shopping center is practicing medicine as a lessee of a commercial or mercantile establishment.[10] The opinion also notes the definition of "commercial establishment" as "'[a] place where commodities are exchanged, bought or sold,'" and the definition of "mercantile" as "'[o]f, pertaining to, or characteristic of, merchants, or the business of merchants; having to do with trade or commerce or the business of buying and selling merchandise.'"[11] The 1985 opinion further concludes that, since the optician's portion of the premises in the shopping center includes "a showroom for the retail sale of eyeglasses, contact lenses and other ophthalmic goods," it "is a commercial or mercantile establishment under § 54-278.1."[12] Although § 54-278.1 has been repealed,[13] the use of the phrase "commercial or mercantile establishment" in that section is identical to its use in § 54.1-3205. Therefore, the 1985 opinion is both applicable to and dispositive of the first question.[14]



You next ask whether an optometrist, who sells prescriptive eyeglasses and contact lenses and nonprescriptive ophthalmic products out of an optical dispensary located within his professional optometric office, may also be deemed to be a "commercial or mercantile establishment" within the definition of § 54.1-3205(C).[15] To answer your question, it is necessary to recognize that § 54.1-1701[16] permits optometrists and ophthalmologists to sell and dispense prescriptive ophthalmic eyewear as an exemption to the licensure requirement in § 54.1-1704 "to practice as an optician." Therefore, notwithstanding the exemption, the sale of ophthalmic goods, whether sold by an ophthalmologist, optometrist or optician, nevertheless constitutes the sale of commodities.

What differentiates ophthalmologists and optometrists from opticians, however, are the statutory exemptions in §§ 54.1-1701, 54.1-2914(D) and 54.1-3202. Pursuant to these statutes, neither ophthalmologists nor optometrists may be deemed to be a "commercial or mercantile establishment" according to the definition of that term as set forth in the 1985 opinion.[17] Moreover, the sale of the prescriptive ophthalmic goods is incidental to the professional practice of ophthalmology and optometry, which includes, among other things, performing eye examinations and issuing prescriptions for corrective eyeglasses and contact lenses.[18] This construction is consistent with the long-standing legislative public policy allowing optometrists to dispense and sell ophthalmic goods, which in turn is reinforced by the 1998 amendment

to § 54.1-2914(D).[19] This amendment authorizes a physician who performs an eye examination to sell prescriptive eyeglasses and dispense contact lenses (just as optometrists have been so authorized for many years) as a way of assuring a patient's eye health. Further support for this construction is predicated on the fact that the practice of opticians is expressly limited by § 54.1-1700 as one where the "'[o]ptician' ... prepares or dispenses eyeglasses, spectacles, lenses, or related appurtenances, for the intended wearers or users, *or prescriptions from licensed physicians or licensed optometrists*." (Emphasis added.)

The legislative policy inherent in § 54.1-3205 is two-fold: (1) to maintain an extrication of the practice of optometry from commercial or mercantile establishments; and (2) to prevent commercial enterprises from exercising control over an optometrist's professional practice.[20] Although the 1985 opinion references physicians, the same concerns are applicable to the practice of optometry. In addition, §§ 54.1-3205.1 and 54.1-3215(11), (13)-(16)[21] constitute further indications of a continuing legislative policy of preventing improper lay control over professional decisions.

---

[1]A "licensed optician" is "the holder of a license issued by the Board for Opticians." Section 54.1-1700. "*'Optician'* means any person, not exempted by § 54.1-1701, who prepares or dispenses eyeglasses, spectacles, lenses, or related appurtenances, for the intended wearers or users, on prescriptions from licensed physicians or licensed optometrists, or as duplications or reproductions of previously prepared eyeglasses, spectacles, lenses, or related appurtenances; or who, in accordance with such prescriptions, duplications or reproductions, measures, adapts, fits, and adjusts eyeglasses, spectacles, lenses, or appurtenances, to the human face." *Id.*

[2]Section 54.1-3205(A) makes it "unlawful for any optometrist to practice his profession as a lessee of or in a commercial or mercantile establishment, or to advertise, either in person or through any commercial or mercantile establishment, that he is a licensed practitioner and is practicing or will practice optometry as a lessee of or in the commercial or mercantile establishment."

[3]*See* 1938 Va. Acts ch. 442, at 995, 997-98 (enacting § 1635(2)(k)).

[4]*See id.*

[5]1948 Va. Acts ch. 205, at 442 (quoting § 1639-a, codified in Code of 1950 as § 54-397.1). Chapter 205 did not repeal § 1635(2)(k) of the 1938 act. *See id.* In 1979, the General Assembly struck the misdemeanor language in § 54-397.1. *See* 1979 Va. Acts ch. 39, at 45, 49.

[6]The 1988 Session of the General Assembly recodified Title 54 as Title 54.1 and § 54-397.1 as § 54.1-3205(A). 1988 Va. Acts ch. 765, at 1016, 1139.

[7]*Compare* 1988 Va. Acts, *supra*, at 1139 (§ 54.1-3205(A)), *with* 1979 Va. Acts, *supra* note 5, at 49 (§ 54-397.1)).

[8]*Compare* 1988 Va. Acts, *supra*, at 1139 (§ 54.1-3205(B)), *with* 1979 Va. Acts, *supra*, at 47 (§ 54-388(2)(k)).

[9]*See, e.g.,* Op. Va. Att'y Gen.: 1977-1978 at 318 (defining "mercantile" and "commercial establishment" within meaning of predecessor statute § 54-388(2)(j), (k)); 1970-1971 at 312, 313 (concluding that practice of optometry through professional corporation does not fit within definition of "mercantile" and, therefore, would not be prohibited act under predecessor statute § 54-397.1).

[10]1985-1986 Op. Va. Att'y Gen. at 235, 236 (citing § 54-278.1, repealed statute similar to optometric prohibition in § 54-397.1, recodified as § 54.1-3205, and to § 54.1-2716, prohibiting practice of dentistry in commercial or mercantile establishment).

[11]*Id.* at 237 n.1 (quoting Black's Law Dictionary 245, 890 (5th ed. 1979)).

[12]*Id.* at 236.

[13]*See* 1988 Va. Acts, *supra* note 6, at 1016.

[14]*See also* 1984-1985 Op. Va. Att'y Gen. 339, 340. This opinion notes that the terms "merchant" and "manufacturer" are not defined in the Virginia Code; however, the Supreme Court of Virginia has considered their meaning and discussed their applicability in various fact situations. *See, e.g.,* Commonwealth v. Meyer, 180 Va. 466, 472-73, 23 S.E.2d 353, 356 (1942) (defining "merchant" as "'one who is engaged in the business of buying commercial commodities and selling them again for the sake of profit'" (citation omitted)).

[15]Section 54.1-3205(C) defines "commercial or mercantile establishment" as " business enterprise engaged in the selling of commodities."

[16]Beginning with the 1954 enactment of legislation creating the Virginia State Board of Opticians, licensed physicians (ophthalmologists) and optometrists have been exempt from licensure as opticians. *See* 1954 Va. Acts ch. 237, at 280, 280 (enacting § 54-398.1, predecessor to § 54.1-1701).

[17] *See* 1985-1986 Op. Va. Att'y Gen., *supra* note 10, at 237 n.1.

[18] *See, e.g.*, § 54.1-3200 (defining "practice of optometry").

[19] *See* 1998 Va. Acts ch. 580, at 1367, 1368.

[20] *See* 1985-1986 Op. Va. Att'y Gen., *supra* note 10, at 237 (referencing repealed § 54-278.1 (physicians), which is applicable to § 54.1-3205 (optometrists)); *see also* 1992 Op. Va. Att'y Gen. 147, 150 (explaining that "corporate practice of medicine" doctrine adopted by other states is influenced primarily by statutory and public policy concerns that medical community could be subject to commercial exploitation that would result in divided loyalties, motivated by profit and improper lay control over professional decisions).

[21] Section 54.1-3205.1 prohibits the supervision of an optometrist by any officer, employee or agent of a commercial or mercantile establishment who is not licensed to practice optometry. Section 54.1-3215(11), (13)-(16) authorizes the Board of Optometry to revoke or suspend the license of, or to reprimand, an optometrist for violating certain standards of conduct adopted by the Board.

**Back to Opinons Index**