**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
─────────────────────────────────
                                  )
TINA C. NGUYEN, O.D.,             )
                                  )
              Plaintiff,          )
                                  )  Civil Action No. 06-485(EGS)
              v.                  )
                                  )
VOORTHUIS OPTICIANS, et al.,      )
                                  )
              Defendants.         )
─────────────────────────────────)
```

**MEMORANDUM OPINION**

Plaintiff, Dr. Tina Nguyen, O.D., brought this action against defendants, Voorthuis Opticians, Inc. and Dr. Rebecca Voorthuis, O.D., asserting claims of fraud, breach of contract, and constructive discharge related to her employment at Voorthuis Opticians, Inc. Plaintiff also asserted several property claims related to certain health records she maintained while employed by defendant. Pending before the Court is defendants' motion to dismiss plaintiff's amended complaint for failure to state a claim on which relief can be granted. Upon consideration of the motion and supporting memorandum, the response and reply thereto, the applicable law, and the entire record, the Court determines that plaintiff's claims of breach of contract, constructive discharge, and all claims against Dr. Rebecca Voorthuis have not been sufficiently justified. However, plaintiff has stated sufficient facts to support her property claims related to the

1

health records, as well as her claims of actual fraud,
constructive fraud, and fraudulent inducement.  Therefore, for
the reasons stated herein, defendants' motion to dismiss is
**GRANTED in part and DENIED in part**.

### BACKGROUND

Plaintiff, Dr. Nguyen, is an optometrist licensed to
practice optometry in the District of Columbia, Maryland and
Virginia.[1]  Am. Compl. at ¶ 1.  Dr. Nguyen was previously
employed as an optometrist by defendant, Voorthuis Opticians,
Inc. ("Voorthuis Opticians").  *Id.* at ¶ 7.

Defendant Voorthuis Opticians is a District of Columbia
corporation with offices in the District of Columbia, Maryland
and Virginia.  *Id.* at ¶ 2.  Voorthuis Opticians' primary business
is selling eyewear for "prescription and sunglass use," but it
also has an optometrist on-site at each location to perform eye
examinations and contact lens fittings.  *Id.* at ¶ 3.  Defendant
Dr. Rebecca Voorthuis is an optometrist licensed to practice
optometry in Virginia.  *Id.* at ¶ 5.  She is an employee of
Voorthuis Opticians and her father, Albert Voorthuis, owns the
company.  *Id.*

From March 17, 2003 until May 28, 2003, Dr. Nguyen was

---

[1] In deciding a motion to dismiss, the Court must accept as
true all factual allegations in the complaint.  *See Atchinson v.
District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

employed by Voorthuis Opticians on a part-time basis.  *Id.* at ¶
8.  Prior to accepting full-time employment, Dr. Nguyen met with
John Morley, General Manager of Voorthuis Opticians.  *Id.* at ¶ 5.
During this meeting Dr. Nguyen asked Morley if she was legally
permitted to work in the company's Virginia locations in light of
a Virginia law prohibiting optometrists from working in
"commercial or mercantile" establishments.  *Id.; see generally*
Va. Code Ann. 54.1-3205 (2006).  Morley told Dr. Nguyen that the
statutory prohibition did not apply to Voorthuis Opticians
because the company was headquartered in the District of Columbia
and was a family-owned business.  *Id.* at ¶ 5.  Following this
meeting, Dr. Nguyen executed an employment agreement with
Voorthuis Opticians.  *Id.* at ¶ 7.

From May 28, 2003 until January 18, 2006, Dr. Nguyen
practiced optometry primarily in the company's office in Old
Towne Alexandria, Virginia.  *Id.* at ¶ 9.  During this time, Dr.
Nguyen treated several thousand patients and maintained a
separate health record file for each patient (collectively the
"Virginia health records").  *Id.* at ¶ 10.

On January 6, 2006, Dr. Nguyen learned that she was
practicing optometry in violation of the Virginia statute which
prohibited optometrists from working in commercial or mercantile
establishments.  *Id.* at ¶ 11.  "[W]hen Dr. Nguyen confronted the
Company with this information, the Company, through Rebecca

Voorthuis, reiterated its previous position that a 'loophole' in the law allows the Company to hire optometrists because the Company is headquartered in the District of Columbia." *Id.* On January 7, 2006, Morley spoke with Dr. Nguyen and told her that despite the Virginia law, her employment with Voorthuis was "not a problem and that she should continue as [she had] been for the past 2 and a half years." *Id.* Despite these assurances, Dr. Nguyen's concerns about the Virginia law led her to quit treating patients at defendant's Virginia locations on January 7, 2006. *Id.* at ¶ 12. On January 12, 2006, Dr. Nguyen informed Voorthuis Opticians that she also would not work at its District of Columbia location "because the Company could not offer legal assurance that she was protected by the Company's medical malpractice insurance policy." *Id.* at ¶ 13. On January 18, 2006, a representative of Voorthuis Opticians told Dr. Nguyen that she would be dismissed if she did not report to work at its District of Columbia location on January 19, 2006. *Id.* at ¶ 14. After receiving this notice, Dr. Nguyen resigned on January 18, 2006. *Id.* at ¶ 15.

On January 26, 2006, Dr. Nguyen wrote a letter to Voorthuis Opticians requesting that the Virginia health records she maintained during her employment be turned over to her. *Id.* at ¶ 19. On February 2, 2006, Voorthuis Opticians rejected this

request and informed plaintiff that the records "are and will remain in the custody of Rebecca Voorthuis, O.D." *Id.* at ¶ 20. Dr. Nguyen filed the instant suit on March 9, 2006, in Superior Court for the District of Columbia. Defendants removed the action to this Court on March 14, 2006, asserting diversity jurisdiction. After plaintiff filed an amended complaint in this Court on April 25, 2006, defendants filed the pending motion to dismiss.

## STANDARD of REVIEW

A motion to dismiss for failure to state a claim should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sparrow v. United Air Lines*, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (citations omitted). Moreover, a complaint will be liberally construed on Rule 12(b)(6) motions. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004). The Court will accept as true all factual allegations in the complaint, and give plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

## ANALYSIS

### I. Virginia Health Records

Dr. Nguyen asserts a number of claims related to the Virginia health records, including detinue of the records,

unlawful seizure and detention of the records, intentional interference with her business relationships related to the records, and conversion of the records.  Plaintiff also requested declaratory judgment that she is the rightful owner of the records.  Defendants moved to dismiss each of these counts, asserting that the Virginia health records are the property of Voorthuis Opticians, not Dr. Nguyen.

Under Virginia law,[2] "[m]edical records maintained by any health care provider . . . shall be the property of such health care provider or, in the case of a health care provider employed by another health care provider, the property of the employer." Va. Code Ann. § 54.1-2403.3 (2006); *see also id.* § 32.1-127.1:03(A) (recognizing an individual's right of privacy in the content of health records, and noting that "[h]ealth records are

---

[2] In a diversity action, a federal court applies the choice of law principles of the state or jurisdiction in which it sits. *See Rafferty v. NYNEX Corp.*, 60 F.3d 844, 849-50 (D.C. Cir. 1995) (citing *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988)). Under District of Columbia conflict of law principles, the Court must conduct the choice of law analysis for each claim being adjudicated.  *See Thompson v. Islam*, 2005 U.S. Dist. LEXIS 37114, at *9 (July 29, 2005) (citing *In re Air Crash Disaster at Washington, D.C.*, 559 F. Supp. 333, 341 (D.D.C. 1983)).  The District of Columbia uses a modified "governmental interest analysis," under which the Court evaluates the governmental policies underlying the law and determines which jurisdiction's policies would be most advanced by having its laws applied to the case.  *Id.* at *10.  For all claims presented in this case defendant assumes that Virginia law applies.  Plaintiff concedes that Virginia law controls all claims related to the Virginia health records, and does not contest the use of Virginia law for the remaining claims.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 5.  The Court, therefore, utilizes Virginia law in assessing all pending claims.

the property of the health care entity maintaining them"). As a licensed optometrist, Dr. Nguyen, is a health care provider. *See id.* § 8.01-581.1. The issue before this Court, then, is whether Voorthuis Opticians is also a health care provider. If Voorthuis Opticians is a health care provider then the medical records belong to the company; however, if Voorthuis Opticians is not a health care provider, then the records belong to the health care provider who maintained them – Dr. Nguyen.

Voorthuis Opticians argues that it falls within the statutory definition of "health care provider" because it is a corporation "which employs or engages a licensed health care provider and which primarily renders health care services." *Id.* Defendant asserts that it "primarily renders health care services" by selling prescription eyeglasses. Plaintiff counters that the selling of eyeglasses is a "commercial or mercantile" service, and therefore, defendant does not primarily render health care services. *See* Va. Code Ann. § 8.01-581.1. Several Virginia cases have addressed when a corporation meets the statutory definition of "primarily render[ing] health care services." In *Pulliam v. Coastal Emergency,* the Supreme Court of Virginia found that a corporation that recruited doctors to work in hospital emergency departments put forth sufficient evidence to establish a prima facie case that it was an entity which "primarily rendered health care services." 509 S.E.2d 307, 320

7

(Va. 1999).  The *Pulliam* court rejected plaintiff's argument that defendant corporation was merely a specialized type of employment placement service.  *Id.*  Instead, the court focused on the corporation's mission – that it was "created to provide emergency physicians to staff emergency departments of hospitals for the purpose of rendering health care services in such departments." *Id.* at 319-20.  Because the purpose of the corporation was to employ medical agents who would provide health care services directly to the community, the court found that the corporation met the statutory definition of a "health care provider."  *Id.* Likewise, in *Didato v. Strehler*, the Supreme Court of Virginia found that there was "no dispute" that a professional corporation "engaged in providing health care services relating to the practice of pediatrics" was a health care provider.  554 S.E.2d 42, 47 (Va. 2001).

Virginia courts, however, have been unwilling to extend the "health care provider" classification to businesses that provide more ancillary health services.  In *Richman v. National Health Laboratories*, the Virginia Supreme Court held that a clinical laboratory was not a health care provider.  367 S.E.2d 508, 511 (Va. 1988).  The Court's decision turned on the fact that clinical laboratories were not listed as health care providers in the statute.  *See id.* (noting that the statute specifically refers to hospitals and nursing homes, and explaining that

8

"[t]here is nothing about the nature of hospitals and nursing homes which suggests that clinical laboratories, although not mentioned, should nevertheless be included in the statute"). Similarly, in *Gressman v. Peoples Service Drug Stores, Inc.*, a Virginia Circuit Court held that a pharmacy did not fall within the statutory definition of a health care provider.  10 Va. Cir. 397, 403 (Va. Cir. Ct. 1988).  The court explained that the legislature could have easily added pharmacies to the list of recognized health care providers in the statute.  *Id.*  The court also noted that "[i]t would have been just as easy to have included within the definition of 'health care provider' any employer of a health care provider."  *Id.*  Because the legislature did not include such provisions in the statute, the court concluded that "such provisions were not intended."  *Id.*

These cases demonstrate that, in determining whether a corporation is a health care provider, the proper inquiry focuses on both the purpose of the corporation and the direct or ancillary nature of the medical services provided by the corporation.  When drawing all reasonable inferences in plaintiff's favor, Dr. Nguyen has pleaded sufficient facts to establish that Voorthuis Opticians renders primarily ancillary medical services and, therefore, is not a health care provider. Specifically plaintiff has alleged that Voorthuis Optician's corporate purpose is to provide "designer, traditional and

innovative eyewear" for "prescription and sunglass use," and
noted that annual gross sales for commercial products were more
than one million dollars at the Olde Towne Alexandria, Virginia
location, while fees for optometric services were only $95,000.
*Id.* at ¶ 3.  These facts distinguish Voorthuis Opticians from
corporations aimed at placing doctors in emergency rooms or
providing pediatric healthcare services.  *See Didato*, 554 S.E.2d
at 47; *Pulliam*, 509 S.E.2d at 320.  Just as pharmacies and
laboratories are not health care providers because they primarily
render ancillary services at the direction of a health care
provider, Voorthuis Optician's business of "stocking a large
inventory of the very best eyeglass frames" and creating "custom
crafted" lenses based on the prescription of an optometrist does
not establish that they are a health care provider.  Am. Compl.
at ¶ 2; *see Richman,* 367 S.E.2d at 511 ; *Gressman*, 10 Va. Cir. at
403.[3]  Consequently, plaintiff's claims related to possession of

---

[3] Plaintiff also persuasively argues that Voorthuis
Opticians is a "commercial or mercantile establishment," and
thus, not a health care provider.  *See* Va. Code Ann. § 8.01-
581.1.  While not binding precedent on this Court, administrative
opinions by the Attorney General of Virginia support plaintiff's
position.  *See, e.g.,* Op. of Att'y Gen. to Mr. John W. Hasty,
Director, Dep't of Health Professions, 00-052 (July 28, 2000)
(prior to 2005 amendments) (concluding that a business which
engages in the sale of prescriptive eyeglasses and contact lenses
and nonprescriptive ophthalmic products, including the business
of a licensed optician, constitutes a "commercial or mercantile
establishment" within the meaning of the statute); *see also
Cowardin v. Burrage*, 77 S.E.2d 428, 431 (Va. 1953) (finding that
a business which sold jewelry, examined eyes and sold
prescription glasses was a "commercial or mercantile
establishment" as contemplated by the law).

the Virginia health records survive defendant's motion to
dismiss.

## II. Breach of Contract

Defendants also move to dismiss plaintiff's claim for breach
of contract based on Dr. Nguyen's at-will employment status.
There is a rebuttable presumption under Virginia law that
employment is terminable at-will unless the employment contract
limits the duration of employment. *See Miller v. SEVAMP, Inc.*,
362 S.E.2d 915, 917 (Va. 1987) ("Virginia adheres to the common-
law rule that when the intended duration of a contract for the
rendition of services cannot be determined by fair inference from
the terms of the contract, then either party is ordinarily at
liberty to terminate the contract at-will, upon giving the other
party reasonable notice."). Nothing in the complaint suggests
any durational limitation on Dr. Nguyen's employment. *See* Am.
Compl. at ¶ 7 (describing the employment agreement); *see also*
*Miller*, 362 S.E.2d at 918 (finding an at-will employment
relationship when the employment contract contained "no
provisions from which a fixed period of intended duration can
fairly be inferred"). Based on the facts presented in the
complaint, Dr. Nguyen was an at-will employee of Voorthuis
Opticians.

Accordingly, under the at-will employment doctrine, either
Dr. Nguyen or Voorthuis Opticians had the right to end the

employment relationship "for any reason or for no reason" without incurring liability.[4]  *See, e.g.*, *Miller*, 362 S.E.2d at 917. Based on this general principal, there was no breach of contract when Dr. Nguyen "was forced to resign" on January 18, 2006.  Am. Compl. at ¶ 26.  Moreover, because "[a] covenant of good faith and fair dealing will not be implied as a part of an at-will employment contract where the employer as well as the employee are at liberty to terminate the contract," plaintiff's claim of breach of contract must fail on these grounds as well.  *Wright v. St. Charles Water Auth.*, 59 Va. Cir. 244, 246 (Va. Cir. Ct. 2002); *see Derthick v. Bassett-Walker, Inc.*, 904 F. Supp. 510, 522 (W.D. Va. 1995) (explaining that breach of an implied

---

[4]  There is, however, a narrow exception to the general at-will employment doctrine, which prohibits an employer from terminating an at-will employee on grounds that violate public policy. *See, e.g., Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985) (explaining that if an employee's discharge violates a right conferred by a statute, then the employee may bring a cause of action for improper discharge).  While plaintiff states that "[t]he notice of termination dated January 18, 2006, was in violation of public policy," she has not pled a cause of action for wrongful termination in violation of public policy.  Am. Compl. at ¶ 36.  Even assuming that she had, this claim would fail as plaintiff did not identify a particular Virginia statute which Voorthuis Opticians violated.  *See Chrysler Corp. v. Brooks*, 465 S.E.2d 806, 809 (Va. 1996) ("Unlike the plaintiffs in *Bowman* and *Lockhart*, [the plaintiff] does not have a cause of action for wrongful discharge because he is unable to identify any Virginia statute establishing a public policy that [the employer] violated."); *see also Leverton v. Alliedsignal, Inc.*, 991 F. Supp. 486, 490 (E.D. Va. 1998) ("a claim for wrongful discharge under *Bowman* cannot succeed unless the plaintiff identifies a Virginia statute establishing a public policy which was violated by the defendant in terminating the plaintiff").

covenant of good faith and fair dealing in an at-will employment contract is not cognizable under Virginia law).  Therefore, plaintiff has failed to state a valid breach of contract claim.

## III. Constructive Discharge

Defendants also move to dismiss plaintiff's claim for constructive discharge.  "To establish constructive discharge, a plaintiff must show that the termination was in violation of clear and unequivocal public policy of this Commonwealth that no person should have to suffer such indignities and that the employer's actions were deliberate and created intolerable working conditions." *Barron v. NetVersant-N. Va., Inc.*, 68 Va. Cir. 247, 252 (Va. Cir. Ct. 2005) (quoting *Padilla v. Silver Diner,* 63 Va. Cir. 50, 57 (Va. Cir. Ct. 2003)). Plaintiff alleges that Voorthuis Optician's insistence that she report to work in the District of Columbia, where her medical malpractice coverage may not have applied, created an intolerable work condition that forced her to resign.  Am. Compl. at ¶ 36.  Even assuming that plaintiff's resignation was occasioned by conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," plaintiff failed to identify a specific statute which defendants violated by asking her to report to work in the District of Columbia.  *See Johnson v. Behsudi*, 52 Va. Cir. 533, 538 (Va. Cir. Ct. 1997)

(holding that in order to sustain an action for constructive discharge the plaintiff must show that "the conduct resulting in the resignation violated a Virginia public policy embodied in an existing statute").  Consequently, plaintiff's claim of constructive discharge also fails.

## IV. Fraud

In her complaint, plaintiff sets forth several theories of fraud including actual fraud, constructive fraud, and fraudulent inducement to accept employment.  These allegations all stem from representations made by Morley to Dr. Nguyen in response to her inquiry as to whether employment by the compnay would violate the Virginia law prohibiting optometrists from working in commercial or mercantile establishments.  Am. Compl. at ¶ 5*; see generally* Va. Code Ann. § 54.1-3205.  In her complaint, plaintiff alleges that Morley "falsely assured Dr. Nguyen that the Virginia Code prohibition did not apply based, first, on a 'loophole' in the law that allowed the Company to hire optometrists because the Company was headquartered in the District of Columbia, and, second, that Rebecca Voorthuis was a licensed optometrist, and that the Company, as a 'family owned business,' was thus not subject to the Virginia Code prohibition."  Am. Compl. at ¶ 5. Plaintiff claims that she relied upon these allegedly fraudulent representations and was injured as a result.  Defendants, however, argue that these claims should be dismissed because the

first statement was a legal opinion, not a misrepresentation of material fact, and the second statement was true, and therefore, not a fraudulent representation.

"A cause of action for actual fraud requires the plaintiff to prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party mislead, and (6) resulting damage to the party mislead." *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003). Constructive fraud differs from actual fraud only in that "the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently." *Id.* at 582. Because the Court assumes that Morley's statements were made with the requisite intent at this stage of the proceedings, the Court's analysis is the same for all theories of fraud. *See* Am. Compl. at ¶5.

**A. Statements on the "Loophole in the Law."**

In order for Morley's statement regarding the "loophole in the law" to be fraudulent, it must relate to a material fact; his statement of a personal opinion is not actionable. *See Mortarino v. Consultant Eng'g Services, Inc.*, 467 S.E.2d 778, 781 (Va. 1996) ("It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion." (quoting *Saxby v. S. Land Co.*, 63 S.E. 423, 424 (Va. 1909))).

15

Although Morley's statement initially seems to fall within the protected class of opinion, Virginia law emphasizes the importance of examining the *context* in which a false statement was made before determining whether the representation was a statement of fact or opinion. *See, e.g., id.* ("The relative knowledge of the parties' dealings, their intentions and all of the surrounding circumstances, which can only be gathered from the evidence, affect the interpretation which the courts put upon the representations in determining whether they be of fact or opinion."); *Packard Norfolk, Inc. v. Miller*, 95 S.E.2d 207, 211 (Va. 1956) ("each case must in a large measure be adjudged upon its own facts, taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances" (quoting 23 Am. Jur., Fraud and Deceit, § 28, p. 784)). At this point, the Court does not have the facts before it describing the full context of Morley's statement. Because it is possible that plaintiff will be able to prove a set of facts consistent with her allegations of fraud, these claims survive defendant's motion to dismiss.

**B. Statements about the "Family Owned Business."**

Defendants argue that because Morley's other statements to Dr. Nguyen are true – Rebecca Voorthuis *is* a licensed optometrist and Voorthuis Opticians *is* a family owned business – plaintiff

cannot establish that Morley made a "false representation." While these statements may in fact be true, it is important to consider what Morley *did not say* when he was questioned by Dr. Nguyen.

In an action for fraud, "concealment, whether accomplished by word or conduct, may be the equivalent of a false representation, because concealment always involves deliberate nondisclosure designed to prevent another from learning the truth." *Van Deusen v. Snead*, 441 S.E.2d 207, 209 (Va. 1994) (quoting *Spence v. Griffin*, 372 S.E.2d 595, 598-99 (Va. 1988)). In this instance, Morley's decision to tell Dr. Nguyen that Dr. Voorthuis is a licensed optometrist and that Voorthuis Opticians is a family owned business, *without* disclosing the fact that Voorthuis Opticians was owned by Dr. Voorthuis' father – not Dr. Voorthuis – could constitute fraudulent concealment.[5] Drawing all reasonable inferences in plaintiff's favor, Dr. Nguyen has pleaded a set of facts which support her claims of fraud.

---

[5] This omission is likely material because if Dr. Voorthuis had owned Voorthuis Opticians, Dr. Nguyen's employment by Voorthuis Opticians would not have offended the Virginia statute. *See* Va. Code Ann. § 54.1-3205(D) (2006) ("[A]ny entity that is engaged in the sale of eyeglasses or contact lenses, the majority of the beneficial ownership of which is owned by an ophthalmologic practice and/or one or more ophthalmologists, shall not be deemed to a commercial or mercantile establishment.").

## V. Dr. Rebecca Voorthuis, O.D.

Finally, defendants request the dismissal of all claims against Dr. Rebecca Voorthuis.  In their motion to dismiss, defendants set forth several reasons why this Court should dismiss these claims.  Plaintiff's opposition, however, failed to address any of these arguments.  Consequently, it is within the discretion of this Court as to whether or not to dismiss these claims.  *See Hopkins v. Women's Div., Bd. of Global Ministries,* 238 F. Supp. 2d 174, 177 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").  Because plaintiff failed to explain why Dr. Voorthuis should be held personally liable for actions she committed while acting within the scope of her employment at Voorthuis Opticians, this Court will exercise its discretion and dismiss all claims against Dr. Voorthuis.

### CONCLUSION

Because plaintiff's claims of breach of contract (Count III of the Amended Complaint), constructive discharge (Count VII of the Amended Complaint), and all claims against Dr. Rebecca Voorthuis, O.D., have not been sufficiently justified, defendants' motion to dismiss is **GRANTED in part**, with respect to these claims.  However, plaintiff has adequately supported her

18

claims related to the Virginia health records, as well as her claims of actual fraud, constructive fraud, and fraudulent inducement.  Accordingly, defendants' motion to dismiss is **DENIED in part**, with respect to these claims.  An appropriate Order accompanies this Memorandum Opinion.


**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **March 21, 2007**